IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SCOTT SOONIL LEE, | § | |
| Plaintiff, | § | CIVIL NO. 3:22-cv-271 |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Defendant. | § | |

# PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES MR. SCOTT SOONIL LEE, AN INDIVIDUAL, hereinafter referred to as Plaintiff, complaining of the UNITED STATES OF AMERICA, Defendant, and for cause of action and injunctive relief would respectfully show unto the Court the following:

## I.
## Parties, Jurisdiction and Venue

**1.1** This is a medical malpractice case.

**1.2** Plaintiff resides at 2109 Northmoor Drive, Carrollton, Dallas County, Texas, within the jurisdiction of this Court.

**1.3** Defendant UNITED STATES OF AMERICA may be served, pursuant to Fed. R. Civ. P. 4(i), by delivering a copy of the summons and the complaint to the United States Attorney for the Northern District of Texas and the Attorney General of the United States.

**1.4** This action against the UNITED STATES OF AMERICA arises under the Federal Tort Claims Act, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1346(b) and 1367.

**1.5** Venue is proper in this district pursuant to 28 U.S.C. § 1391(e), as the United States is a Defendant and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## II.
## Statement of Relevant Facts

### OVERVIEW

**2.1** Mr. Scott Soonil Lee is a veteran who is service connected for the following disabilities: lumbar spine myofascial syndrome; radiculopathy of the right and left lower extremities; asthma and COPD; right shoulder disability; left shoulder disability; left knee instability and ACL and meniscal tears; right and left elbow disabilities; cervical spine disability; right knee sprain; left wrist tendonitis; right thigh impairment with osteoarthritis; residual left knee surgical scars; tension headaches; right wrist tendonitis; right hip limitations of flexion; right hip dislocation; right leg length discrepancy; and an adjustment disorder with anxiety and depression.

**2.2** Despite medical requirement, and requests by Mr. Lee, internal VA doctors, and recommendations from his outside physician, Mr. Lee has not received the required medical care necessary to rectify or alleviate the pain, instability, and discomfort that he needs in order to save his leg from being amputated, to prevent worsening infection throughout his body, or to be able to perform activities of daily living. To the contrary, the Dallas VA Medical Center (the "VAMC") and the Plano VA Outpatient Clinic (the "VAOC") have failed and refused to provide Mr. Lee with adequate medical care, support, equipment, and necessary medical procedures, causing Mr. Lee's ailments listed to be created or exacerbated.

**2.3** Due to the delay in approving his necessary surgery, the outright denial of care and support, mismanagement of his medical records, mistaking him for other patients whose last names are also Lee, and blatant degradation of his person, character, and physical condition, the Dallas

VAMC and the Plano VAOC have made his condition worse. Mr. Lee continues to deteriorate, up to and including the date of the filing of this complaint, so much that his outside physician has informed him that his leg may not be salvageable, and amputation may be required due to the infection spreading throughout his body.

2.4     Despite having a 100% disability rating, a 38 U.S.C. § 1151 determination that the VA may have caused a worsening of his left knee and that he is entitled to Special Monthly Compensation (SMC) based on aid and attendance, and despite a letter of support written by the Honorable U.S. Senator John Cornyn, the VA has denied Mr. Lee's ACL reconstruction surgery and the Care Giver Support Program (CGSP) has denied him in-home care and support. This has caused financial and physical burden not just on Mr. Lee but also on his 80-plus-year old parents.

### THE DALLAS VA MISDIAGNOSED MR. LEE'S TORN MCL AND ACL IN SEPTEMEBER AND OCTOBER OF 2016 AS "ARTHIRITIS" AND FAILED AND REFUSED TO GIVE HIM THE KNEE BRACE AND WHEELCHAIR HE REQUIRED WHICH FURTHER DESTABALIZED HIS KNEE.

2.5     In August 2016, Plaintiff Scott Lee was asleep when his knee separated and caused his foot and ankle to rotate laterally by 180 degrees.

2.6     The following morning, he called the Dallas Veteran Administration Medical Clinic (VAMC), where he'd already scheduled a September appointment with his PCP, to ask them what he should do. They told him to just wait 10 days and talk about it with his doctor.

2.7     On or around September 1, 2016, plaintiff did present to the VAMC, by appointment, seeking medical attention for his knee that rotated. Upon arrival at the VAMC, Mr. Lee was examined by his new Primary Care Physician ("PCP"), Dr. Inder Khurana, who told him that his knee pain was probably due to arthritis and that this was typical for people in their thirties. He cracked his knuckles as a demonstration that arthritis is common. Dr. Khurana ordered an MRI.

2.8     During his initial visit, Mr. Lee requested a wheelchair, as the wheelchair that he'd been borrowing from a local church was too big and difficult to maneuver, and his crutches caused issues with his rotator cuff and low back. Mr. Lee was not given a wheelchair but was told to return to the hospital if he had any more pain.

2.9     Mr. Lee returned to the hospital for knee pain on October 6, 2016, and to review the MRI. At that appointment, Dr. Khurana told Mr. Lee that his knee was normal and generally stable.

2.10    In the afternoon on December 11, 2016, Mr. Lee returned to the hospital room by way of emergency. His knee had dislocated again. At the December 11, 2016, emergency room visit, Mr. Lee was seen by Dr. Paul Alexander Compton. Dr. Compton listened to Mr. Lee's complaints of continued knee pain and diagnosed him with abnormal pain in his left knee joint, his right shoulder, and his lower back. He diagnosed that Mr. Lee needed a custom knee brace and wheelchair.

2.11    The same day, Mr. Lee told Dr. Compton what the PCP said in September. Dr. Compton told Mr. Lee that Dr. Khurana was incompetent and that he should request a new PCP. He did.

2.12    Dr. Compton also put in a request to the Orthopedic Department that Mr. Lee be fitted for, and provided with, custom knee braces; and that he be provided a wheelchair.

2.13    Mr. Lee was sent to a new PCP, Dr. Elizabeth Neenan-George ("Dr. George"), who told him in his first visit that she did not want to be his doctor because she knew about his complaints against Dr. Khurana. In front of Mr. Lee's fiancé, Dr. George told Mr. Lee that he was a bad patient and that she would not input any of his required medical orders unless he signed a letter releasing her as his PCP. He did not sign the form and she did not input his necessary orders.

2.14    In a December 15, 2016 progress note after a surgery consultation dictated by Dr. Emmanuel Nwelue, the VA provided that Mr. Lee at least needed left knee arthroscopy and custom

knee braces. This was after noting that his October MRI "shows lateral meniscal cyst, new tear in lateral meniscus, and a posterior horn medial meniscus tear."

2.15  Mr. Lee never received a call from the orthopedics department, did not receive a wheelchair, and did not receive the knee braces until nearly two years after his initial appointment.

### THE DALLAS VAMC WRONGFULLY SENT MR. LEE TO SEE A CHIROPRACTOR FOR HIS BACK INJURIES WHEN NONINVASIVE PROCEDURES WERE REQUIRED

2.16  When Mr. Lee complained of his back pain the VAMC sent him to a chiropractic student who performed intense chiro on his back including applying pressure to his back and spine.

2.17  When Mr. Lee complained that the chiro was causing more pain and that he was no longer able to feel his toes, the VA sent him to have an evaluation with Dr. Sebastian in Fort Worth, TX.

2.18  After reviewing an MRI of Mr. Lee's spine, Dr. Sebastian told Mr. Lee that sending him to a chiropractor was wrong and dangerous. He told Mr. Lee that his spine was twisted, and that the chiropractor had been making things worse; and that continued chiro could paralyze him.

2.19  Dr. Sebastian cancelled Mr. Lee's remaining chiro appointments, requested an updated MRI of his spine, and recommended Mr. Lee see a spinal cord specialist.

2.20  Mr. Lee was then referred to the head of the Neurosurgery Department and Back Surgery Specialist at UTSW, Dr. Kevin Morrill.

2.21  Dr. Morrill reiterated Dr. Sebastian's sentiment that the VA should not have sent Mr. Lee to a chiropractor and that the nerve damage that caused the numbness in his legs was now permanent. He informed him that back surgery would be too dangerous at this point; and that it would be pointless because the nerve damage was irreversible. Finally, he recommended non-invasive procedures to rehabilitate and stretch Mr. Lee's vertebrae and sent Mr. Lee to Dr. Amy Phelan, also of UTSW.

**2.22** Dr. Amy Phelan began working with Mr. Lee, around June 2017, to correct issues in his spine, and noted that a primary goal of the therapy was to position Mr. Lee in a better place for his knee surgery. Working in conjunction with Mr. Lee's orthopedic surgeon, Dr. Phelan also worked to lower Mr. Lee's resting heart rate which, when they first started with him, was so high that the level of anesthesia required for surgery would cause heart failure.

**2.23** Dr. Amy Phelan noted that because he'd been in the oversized wheelchair for so long, with compromised posture, that his vertebrae were under too much pressure causing them to dislocate. For this reason, she needed to inject his muscles with a relaxant to ease the pressure on his spine.

**2.24** Even though Mr. Lee still needs this back treatment, the VA has stopped approving the funding and all of the progress Mr. Lee made on his back stability is regressing.

### THE FAILURE AND REFUSAL TO APPROVE MR. LEE'S KNEE SURGERY ELONGATED HIS TIME IN THE WRONG-SIZED WHEELCHAIR AND CAUSED AND EXACERBATED LUMBAR RADICULOPATHY.

**2.25** Six months after his initial September 2016 visit, the VA determined that Mr. Lee did, indeed, need to see an outside specialist. He was referred to Dr. Jay P. Shah from the University of Texas Southwestern Hospital ("UTSW") in Plano, Texas.

**2.26** At Mr. Lee's first consultation with Dr. Shah, on March 24, 2017, Dr. Shah determined that Mr. Lee did have ACL instability and Meniscus issues of both legs and that he needed custom fitted hinged knee braces. Dr. Shah also opined that Mr. Lee needed to resolve the issues with his back for there to be any success with his knee surgeries.

**2.27** Mr. Lee began requesting assistance from the VA to help stabilize his back and spine in order to have a successful knee surgery. As explained above, the VA determined that his back issues were also too complicated for them to deal with and referred him to Dr. Amy Phelan at UTSW for non-invasive rehabilitation treatment.

**2.28**   On May 27, 2017, Mr. Lee returned to the Dallas VA Emergency room because he knee dislocated again. A Radiology Report from that morning states that the VA took three views of Mr. Lee's left knee. The report interpretation was completed by Bruce Reiner, MD, and states that Mr. Lee's knee appeared "stable," "not significantly changed from 9/1/2016," and that there was "no acute bone injury or malalignment."

**2.29**   The ER Doctor, Dr. Paul Alexander Compton diagnosed Mr. Lee with "knee pain from dislocation." Dr. Compton also noted during this May 27 visit, that Mr. Lee reported a poor quality of life (QOL) due to his knee instability and related issues.

**2.30**   Dr. Compton also wrote, specifically:

> *"[patient] still waiting on custom brace for the left leg; **it is unclear why** [patient] **has yet to receive this brace for a service-connected condition and the existing brace does not fit the patient; despite my and ortho department requests**; since I last saw this paitnet (sic) it was found that he has left sided radiculopathy with nerve damage due to failure to diagnose nerve compression this on pervious (sic) EMG. Pt was initiaqlly (sic) seen by ortho 12/15 and plan was for non-operative therapy and operative therapy depending on outcome; pt on follow up ortho visit was not found to be operative candidate; [...] pt sought a second opinion at UTSW with Dr Shaw (sic) and pt is likely to get oprative (sic) intervention at some time; pt came in today for severe left knee pain due to dislocation in his sleep; pt ongoing **PT Ot for strengthening prior to knee operation**; pt reports (sic) omgoing (sic) 10/10 pain..."*

(Emphasis added).

**2.31**   As noted in Dr. Compton's progress notes, the knee brace Mr. Lee had been using was far too small and not helping. He needed a custom fitted knee brace. Dr. Compton and the orthopedic department made a referral and a request that Mr. Lee receive a custom knee brace 5 months earlier at his December 15, 2016 visit which was also due to a dislocated knee.

**2.32**   At the May 27, 2017 visit, Dr. Compton relocated Mr. Lee's knee, temporarily easing his pain, and again noted that the VA did not get the brace requested by the Orthopedics department.

He also noted that Mr. Lee voiced his concern that he believed the VA had been providing sub-optimal care and requested an outside PCP. At the time, Mr. Lee's PCP was Dr. George.

2.33    Mr. Lee's knee dislocated, again, during a physical therapy session at UTSW on October 3, 2017. This was the fifth dislocation in one year. Dr. Shah immediately ordered an MRI.

**THE VA'S FAILURE AND REFUSAL TO APPROVE MR. LEE'S KNEE SURGERY, EVEN AFTER RECEIVING CORRECT MEDICAL INFORMATION AND AN MRI SHOWING A HOLE IN HIS KNEE AND A RUPTURED ACL GRAFT, EXACERBATED MR. LEE'S KNEE, BACK, AND SHOULDER INJURIES.**

2.34    Five months after his dislocation in Dr. Shah's office, and the MRI wherein which Dr. Shah found the hole in Mr. Lee's knee, on May 4, 2018, Dr. Shah strongly recommended surgery.

2.35    A Progress Note from Mr. Lee's May 4th follow up visit with Dr. Shah demonstrates Dr. Shah's frustration with the VA's delay. It reads, in large part:

> *"Scott Lee returns for follow-up of his recurrent left knee instability after ACL graft rupture, medial and lateral meniscal tears and retained hardware with tunnel widening. He has had significant issues with insurance not approving his surgery even though he was sent to me by the VA since there was an advanced surgery they could not perform there. He was sent to me for revision ACL reconstruction. When he came to me, he was in a wheelchair. […] He has been getting his back issues treated very effectively by Dr. Amy Phelan. […] to put his knee in the best condition to have an operation […]. Once we obtained the appropriate imaging and he had worked in rehabilitation well enough to have the surgery, he started running into issues with […] the VA not wanting to pay for his upcoming surgery. This is extremely baffling to me since this is the whole reason why he was sent to me in the first place. He also states that he was told by the VA […] that his knee is in the best shape that it has been after his treatment at the VA. I would like to reiterate the fact that when he came to me, he was in a wheelchair."*

2.36    Dr. Shah went on to describe the type of surgery that Mr. Lee requires: a two-stage revision, which would be required in order to continue with his activities of daily living.

2.37    When the surgery still was not approved two months later, on July 12, 2018, Dr. Shah wrote a letter on Mr. Lee's behalf, stating clearly that he, as Mr. Lee's orthopedic surgeon, strongly

recommended his two-stage ACL reconstruction surgery and again described the process and recovery time. This letter was largely ignored by the VA.

2.38   When the surgery was yet still not approved nearly one year later, on April 4, 2019, Dr. Shah wrote another letter similar to the July 12 letter, which Mr. Lee provided to the VA, reiterating the fact that Mr. Lee needed this surgery.

### THE DISCRIMINATION AND POOR BEDISDE MANNER HE RECEIVED BY EMPLOYEES AND DOCTORS OF THE VA EXACERBATED MR. LEE'S DEPRESSION, ANXIETY, AND ADJUSTMENT DISORDERS.

2.39   In a doctor's appointment, where Mr. Lee's father was present, Mr. Lee's attending physician told Mr. Lee, who speaks excellent English, that he would need to come back with an interpreter, because the doctor "couldn't understand a word [he] was saying."

2.40   When Mr. Lee was trying to order his knee braces in 2016 after the VA refused and failed to order them for him, Mr. Lee was told that he shouldn't be allowed to have custom knee braces because he would just sell them online.

2.41   In a doctor's appointment, where Mr. Lee's ex-fiancé was present, a doctor told him that she wouldn't input his required medical orders or fill his prescriptions if he didn't sign a form releasing her as his PCP because she didn't like him.

2.42   The staff at the VA have cursed at Mr. Lee, called him racial slurs, and, on one occasion said to him: "Why don't you just stop complaining? You are the worst type of patient. You don't take care of yourself. You should just get up out of that wheelchair and walk like a man."

2.43   The VA regularly mixed-up Mr. Lee's appointments and records with other patients who had the same last name.

**2.44** Due to these encounters Mr. Lee has felt gaslighted, ashamed, afraid, frustrated, and anxious about each and every time he has had to go to the VA for any and all questions and treatment.

**2.45** Mr. Lee was so discouraged to go to the VA for his ailments, that in 2018, after Dr. George ignored his complaints about a cyst on his back for 15 months, Mr. Lee cut the cyst off his own back and only went back to the emergency room when he could no longer bear the pain.

**2.46** When he could no longer bear the pain of the cyst, on July 29, 2018, Mr. Lee went to the emergency room. The ER doctor treating him took photos of the "1.25 cm dry crater" and noted that the patient had chiseled off the abscess "personally with his own blade." The PCP that ignored him on the issue for 15 months, dropped him as a patient two weeks later, on August 15, 2018.

**2.47** When doctor George dropped Mr. Lee as a patient, the only correspondence he received on the issue was a two-paragraph letter, stating that the patient/physician relationship was "not salvageable." They sent him back to the doctor who told him that his torn ACL was arthritis.

**2.48** Mr. Lee was denied at every turn and became so depressed, desperate, and frustrated that he was referred for a Mental Health Consultation, on February 20, 2019 (while at the hospital for yet another knee dislocation), where he admitted that he had suicidal ideations because of his frustrations with the VA.

**2.49** Mr. Lee was diagnosed with adjustment disorder, chronic pain, GAD, and anxiety.

**2.50** The poor treatment continued or worsened after his diagnosis.

**2.51** In a denial letter for the Caregiver Support Program ("CSP"), Plano Chief of Staff Dr. Holt claimed that the CSP Coordinator had contacted Mr. Lee's new (fourth) Primary Care Physician (PCP) Dr. Syed H. Aziz and obtained information from him (i.e., that Mr. Lee did not require

assistance with activities of daily living) which they used as a foundation for denying Mr. Lee's application for in-home support.

2.52    Dr. Aziz told Mr. Lee that that was a lie and that they never contacted him. He informed Mr. Lee that no one wanted to touch Mr. Lee's case because his injuries were so severe.

2.53    To set the record straight, on April 19, 2019, after his discussion with Mr. Lee about the incorrect information (or the outright lie) in the Holt CPS denial letter, Dr. Aziz wrote a note in Mr. Lee's file, stating:

> "Mr. Lee is totally disabled and needs assistance in ADL's performance his parents help him in above."

2.54    Mr. Lee still does not have in-home support.

**THE VA'S FAILURE AND REFUSAL TO APPROVE MR. LEE'S APPLICATION FOR CARE GIVER SUPPORT WAS INCORRECT AND FURTHER EXACERBATED HIS INJURIES.**

2.55    Mr. Lee is on 25 different medications.

2.56    Mr. Lee is in a wheelchair and is 100% disabled.

2.57    Mr. Lee receives SMC.

2.58    Mr. Lee lives with his parents who are 80 years old. His father has cancer.

2.59    Mr. Lee requested caregiver support through the Caregiver Support Program on May 24, 2018.

2.60    Mr. Lee's initial application was denied on June 19, 2018, by the VA North Texas Health Care (VANTHCS) Clinical Assessment Board (CAB).

2.61    He requested a reconsideration through the social workers who "fully" reviewed Mr. Lee's initial application. They were surprised that he was denied and reasoned that it was because they misinterpreted Dr. Shah's notes as saying he would only require 6-months of post-surgical

recovery, when in fact he would need close to two (2) years. The social workers told him that he would need to submit an appeal.

2.62    Mr. Lee an appeal to the Local Levels Appeals Board on July 20, 2018. He included the letters from Dr. Shah indicating that he, in fact, was unable to perform activities of daily living and that his recovery would be closer to two years. Those facts were ignored, and the Local Level Appeals Board denied his application on August 22, 2018, stating that his recovery would be less than 6 months – providing no support for that statement.

2.63    Along with his VISN appeal, Mr. Lee submitted a letter of support from the Honorable John Cornyn of the U.S. Senate.

2.64    Mr. Lee's VISN appeal was denied on January 24, 2019, and which relied on the previous denials that ignored the very real fact that Mr. Lee's recovery would be longer than six months.

2.65    Mr. Lee sued the Caregiver Support Program via the Board of Veteran's Appeals after the final VISN denial claiming that he was entitled to compensation under 38 U.S.C. § 1151 for worsening of his left knee condition due to the VA's carelessness. The Veteran's Law Judge, Judge S. B. Mays, ruled in favor of Mr. Lee on July 11, 2019.

2.66    In the § 1151 decision, VA Law Judge S. B. Mays granted Mr. Lee's request that his RO rating of 100% disability be effective as of December 27, 2016 and analyzed that his injuries were bad enough to qualify him. That judge also asked the VA to reevaluate its treatment of Mr. Lee, to listen to him, and to consider whether it did, in fact, cause the worsening of his injuries.

2.67    Mr. Lee still does not have in-home caregiver support or surgery approval.

**MR. LEE HAS EXHAUSTED ALL AVAILABEL ADMINISTRATIVE REMEDIES TO ADRESS HIS COMPLAINTS AGAISNT THE VA.**

**2.68** Mr. Lee submitted a Form 95, required under the FTCA, to the VA, on September 11, 2018, which alleged misdiagnosis, negligence, delay of care and fraud. The first Form 95 complaint was denied on April 1, 2020.

**2.69** On September 23, 2020, Mr. Lee requested an appeal, in the form of an email request for reconsideration. His appeal was denied by letter via certified mail on August 3, 2021.

**2.70** Mr. Lee, still believing he was entitled to a remedy, submitted a new and separate Form 95 to the VA on August 30, 2021.

**2.71** The VA rejected the second Form 95 complaint, via certified letter, on September 24, 2021, stating that it no longer had jurisdiction over the issue and that Mr. Lee would need to file suit no later than six (6) months from the date of the August 3, 2021 letter; or February 3, 2022.

**2.72** Up to and including the date of this filing, Mr. Lee's injuries continue to worsen. He is still 100% disabled. His surgery will still require at least one year but close to two years of recovery and he is still struggling to take care of himself on a daily basis.

### III.
### Cause of Action Against The United States of America

**3.1**  (a)  Defendant failed and refused to properly treat and care for Scott Lee.

(b)  Mr. Lee's left knee instability and his left knee anterior cruciate ligament (ACL) and meniscus tear was caused by or became worse as a result of one or more of the following:

(b)(i) the VA's negligent treatment, up to and including its failure and refusal to fulfill Mr. Lee's requests for medical procedures or equipment;

(b)(ii) the carelessness, negligence, lack of skill, or similar incidence of fault on party of attending VA personnel;

(b)(iii) the failure and refusal of the VA to timely diagnose and/or properly treat the claimed disease or disability which allowed the disease or disability to continue to progress.

(c) Defendant negligently supervised attending VA personnel including, but not limited to, Dr. Syed Hussain Aziz and care giver support program representatives.

(d) Defendant failed and refused to properly treat, and address Mr. Lee's knee, respiratory issues, and spine infections and these infections were worsened as a result of the VA's negligence.

(e) The VA's representatives racially discriminated against Mr. Lee and retaliated against him when he filed complaints which exacerbated Mr. Lee's anxiety and depressed mood.

**3.2** At all times pertinent to the events described herein, Dr. Syed Hussain Aziz and other VA attending personnel, who shall be specifically named in further pleadings, were employees of and were acting within the course and scope of their employment with the VAOC and thus the UNITED STATES OF AMERICA, and as such, Defendant UNITED STATES OF AMERICA is liable to Plaintiff under the doctrine of Respondeat Superior for the professional errors, omissions and negligence of Dr. Syed H. Aziz and all other physicians, residents and interns left to care for SCOTT SOONIL LEE.

**3.3** At all times mentioned herein, the employees, agents, and/or representatives of the VAOC and the UNITED STATES OF AMERICA (including specifically Dr. Syed Hussein Aziz) were negligent, and causative of the injuries and damages sustained by Plaintiff.

**3.4** This claim against the UNITED STATES OF AMERICA is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. Pursuant to 28 U.S.C. § 2675(a), the claims of Mr. Scott Soonil Lee, as set forth herein, were presented to the Department of Veterans Affairs

on September 11, 2018, and September 23, 2020, respectively. Six months have passed since the presentation of the claims, requests for reconsideration, and all subsequent amendments to the claims.

## IV.
## Damages

**4.1** As a result of Defendant's negligence, Plaintiff has sustained damages. With respect to damages, Mr. SCOTT SOONIL LEE, Plaintiff, seeks to recover for the severe pain and mental anguish which he has sustained, loss of his enjoyment of his use of his legs, as well as for all other damages to which he is entitled.

**4.3** Plaintiff hereby gives notice that by these pleadings he is claiming all damages, past and future, to which Texas law entitles him that were proximately caused by the wrongful acts of Defendant.

**4.4** Plaintiff also seeks to recover prejudgment and post-judgment interest in accordance with Tex. Rev. Civ. Stat. Ann. art. 5069-1.05.

**4.5** Plaintiff also seeks to recover all reasonable and necessary attorney's fees, costs, and expert witness fees.

## V.
## Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that on final hearing hereof, Plaintiff have judgment against Defendant for whatever sums of money he may show to be justly entitled, together with prejudgment and post-judgment interest as provided by law, for costs of suit, and for such other and further relief to which Plaintiff may show to be justly entitled, either at law or in equity.

WHEREFORE, PREMISES CONSIDERED, plaintiff prays that this court grant him **EMERGENCY INJUNCTIVE RELIEF** and require that the defendant VA approve and pay for his still-pending knee surgery, and any associated treatments, to prevent his leg from having to be amputated, and to prevent or mitigate additional injury and infection caused by further delay of this treatment.

Respectfully submitted,

WHITCOM SELINSKY, P.C.

BY: *Joseph A. Whitcomb* (signature)

Joseph A. Whitcomb
Bar No. 39742
2000 South Colorado Blvd.
Tower 1, Suite 9500, Denver, CO 80222
(720) 550-7234 (direct)
(303)534-1949 (fax)
Joe@whitcomblawpc.com

ATTORNEYS FOR PLAINTIFF